STANLEY BIELANSKI *vs.* WESTFIELD SAVINGS BANK
(and a companion case between the same parties).

Hampden.    September 17, 1942. — April 26, 1943.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Mortgage*, Of real estate: foreclosure.    *Contract*, Construction, Performance and breach.

In the absence of an agreement to the contrary, a mortgage of real estate
in the statutory form securing payment of a note payable on demand
properly may be foreclosed without a previous demand for payment of
the note.

Foreclosure of a mortgage of real estate in the statutory form, securing
payment of a note payable on demand given by the mortgagor as the
purchase price of the real estate, did not constitute a breach by the
mortgagee of a contract in writing, made between the parties as part
of the purchase transaction and including provisions that from rents
collected by the mortgagor specified sums were to be paid to the mort-
gagee for application to certain maintenance expenses and upon inter-
est and principal due on the note even if the mortgagor was not in
default in making the payments required by the contract, where the
contract also provided that nothing therein should "be construed to
interfere in any way with the provisions and powers contained in the"
mortgage.

No want of good faith nor lack of reasonable diligence appeared in the.
foreclosure, in conformity with the requirements of its provisions, of
a real estate mortgage of which there had been a breach by nonpay-
ment of the principal of the note secured by it, merely from the facts
that no notice previous to the foreclosure was given to the mortgagor,
the amount for which the property was sold at the foreclosure sale
was approximately that due on the note, and the board of investment
of a savings bank holding the mortgage had voted to foreclose because
the rents of the property had been attached.

TWO ACTIONS, one in CONTRACT and one in TORT.    Writs
in the Superior Court dated November 14, 1938.

The cases were tried before *Brown,* J., and there were
verdicts for the plaintiff.    In this court the cases were sub-
mitted on briefs.

*T. H. Kirkland & H. B. Putnam,* for the defendant.

*D. M. Macaulay,* for the plaintiff.

RONAN, J.    The defendant has saved exceptions to the
refusal of the judge to direct verdicts for it in two actions,

one in contract and the other in tort, for the alleged wrongful foreclosure of a mortgage given to the defendant by the plaintiff.

The plaintiff, on February 1, 1936, purchased from the defendant certain premises consisting of a building containing twenty-six apartments, four stores, and a brick barn used for a garage, for $35,000, which he paid for by a note for this amount, payable on demand and secured by a mortgage. As a part of the transaction the parties executed an agreement, hereinafter referred to as the first rent agreement, with reference to the payment of a part of the rents collected by the plaintiff. This agreement, after reciting that its consideration was the delivery of the deed to the plaintiff and the acceptance by the defendant of his note secured by a mortgage, required the plaintiff to pay $300 each month "from the revenue of said property"; certain portions of these monthly payments were to be allocated, in certain amounts representing one twelfth of the annual interest on the mortgage and taxes and a fixed amount for water and insurance, to the payment of these carrying charges of the property and the balance, if any, at the end of the year was to be applied to the principal of the note. The plaintiff was to permit the defendant to inspect his books of account dealing with the property. He was not to make any major repairs without the prior written approval of the defendant. The defendant agreed to credit and apply the monthly payments in the manner stated. This rent agreement also contained the following provision: "Nothing in this agreement shall be construed to interfer [*sic*] in any way with the provisions and powers contained in the first mortgage given by" the plaintiff to the defendant. This agreement continued in force until June 15, 1937, when it was superseded by a second rent agreement similar in all respects to the previous agreement except that it called for monthly payments of $320.

The rents were attached on June 26, 1937, in a trustee process brought against the plaintiff and his wife. The plaintiff consulted counsel who testified that, in accordance with the plaintiff's directions, a request was made upon the

defendant to take possession of the property under the mortgage. The defendant made an entry on June 28, 1937, and appointed a real estate firm to collect the rents. The plaintiff denied that he knew that the defendant had made an entry, although he testified that on July 2, 1937, he read the written notice given to him by the real estate firm to be delivered to the tenants and which read: "To ALL TEN-ANTS IN THE PROPERTY AT 84 and 86 MAPLE STREET – 161 – 163 – 165 – 167 – Lyman Street IN POSSESSION OF THE WEST-FIELD SAVINGS BANK. You are hereby notified that all rents due and payable are to be paid to Mr. Stanley Bielan-ski." This notice was signed by this real estate firm as agents for the defendant. Thereafter the plaintiff collected the rents until July 15, 1937, and turned them over to the real estate firm. He had made all previous payments of rent to this same firm as a matter of convenience to him and they transferred these amounts to the defendant. There was evidence that the defendant, on July 1, 1937, mailed a demand for the payment of the note on or before July 10, 1937. The plaintiff denied that he received such notice. The defendant began foreclosure proceedings on July 15, 1937, by publishing notice of the foreclosure sale, which was held on August 9, 1937. The defendant bid in the property for $34,582, which was approximately the amount due on the mortgage. The defendant then sold the property for $34,500 to a corporation which was formed by the members of the real estate firm. The plaintiff left Holyoke on July 15, 1937, for a few days' trip to New York. On his way back to Holyoke, he was injured in an automobile accident and was confined for more than three weeks in a hospital in Connecti-cut. He knew nothing about the foreclosure until the de-fendant had disposed of the property.

The plaintiff contends that he performed and observed all that he was required to do under the second rent agree-ment; that by virtue of this agreement there was no breach of the mortgage; and that he was entitled to recover both in contract and in tort for damages resulting from this alleged unauthorized foreclosure of the mortgage.

The note, mortgage and the first rent agreement were all

executed at the same time as parts of the same transaction and were the method adopted by the parties by which the plaintiff was to pay for the conveyance of the property. The intent of the parties is to be ascertained by construing together these three instruments as comprising a single plan by which the defendant was to be paid. *Bryne* v. *Dorey,* 221 Mass. 399. *Skilton* v. *R. H. Long Cadillac La Salle Co.* 265 Mass. 595. *Charlestown Five Cents Savings Bank* v. *Zeff,* 275 Mass. 408. *Baker* v. *James,* 280 Mass. 43. *Mansfield* v. *Lang,* 293 Mass. 386. *Lamson & Co. (Inc.)* v. *Abrams,* 305 Mass. 238.

An indebtedness evidenced by a demand note becomes due as soon as the note is delivered. An action for its collection may be maintained without any previous demand. *Farmers National Bank* v. *Venner,* 192 Mass. 531. *Goodfellow* v. *Farnham,* 239 Mass. 590. *Forastiere* v. *Springfield Institution for Savings,* 303 Mass. 101. The mortgage given by the plaintiff does not appear in the record, but the statement in the bill of exceptions that the mortgage was "a statutory-form mortgage upon the statutory condition" we interpret to mean that the mortgage was in the form set forth in G. L. (Ter. Ed.) c. 183, § 55 (5). A mortgage in that form would have the force and effect attributed to it by virtue of G. L. (Ter. Ed.) c. 183, §§ 19–21. The mortgage must therefore be assumed to state that it was given as security for the payment of the demand note. The note was due without a demand, and we do not think that a demand for payment was a condition precedent to the exercise of the power of sale contained in the mortgage. In *Alden* v. *Lincoln,* 13 Met. 204, an action of trover by the mortgagee against an officer who had attached and sold the goods that were mortgaged as security for the payment of a demand note, it was contended that as the plaintiff had not made any demand upon the mortgagor the former had no right of possession. In answer to that contention this court said (page 209): "We are, however, of opinion that no demand on the mortgagor was necessary." The court distinguished that case from *Forbes* v. *Parker,* 16 Pick. 462, where the note was not due when the attach-

ment was made.   It was held in *Southwick* v. *Hapgood*,
10 Cush. 119, that a personal property mortgage that
secured a demand note could be foreclosed under St. 1843,
c. 72, § 1, before any demand for payment.   It was stated,
at page 121, that "The note described in the mortgage,
being payable on demand, was due presently, and the
condition of the mortgage was broken immediately.   No
demand was necessary upon the promisor to constitute such
breach."   And it has been held in reference to mortgages
upon realty, given to secure a demand note, that a demand
for payment of the note was not required to constitute a
breach of the conditions of the mortgage.   *Union Central
Life Ins. Co.* v. *Curtis*, 35 Ohio St. 357.   *Gillett* v. *Balcom*,
6 Barb. S. C. 370.   *Kebabian* v. *Shinkle*, 26 R. I. 505.

Our next inquiry is to determine whether the right to fore-
close was suspended by the second rent agreement.   We
assume for the purpose of argument in favor of the plaintiff
that this agreement could be found to be in effect when the
foreclosure proceedings occurred.   This agreement did not
in terms fix its duration as a year.   We need not decide
whether, if that provision stood alone, it could be construed
as implying such a period of time, in view of the fact that
any surplus over expenses was to be applied to the principal
and in view of the letter of June 11, 1937, of the defendant's
treasurer, because the provision in question is only a part of
the second rent agreement.   The construction of the agree-
ment was for the court.   *Farber* v. *Mutual Life Ins. Co.*
250 Mass. 250.   *Bresky* v. *Rosenberg*, 256 Mass. 66.   The
intention of the parties must be ascertained from an inter-
pretation of the entire instrument.   *Bray* v. *Hickman*, 263
Mass. 409.   *Malden Knitting Mills* v. *United States Rubber
Co.* 301 Mass. 229.   *Burns* v. *Great Atlantic & Pacific Tea
Co.* 312 Mass. 551.   The agreement expressly forbade any
construction that would interfere with any of the provisions
and powers contained in the mortgage.   No effect could be
given to the rent agreement that would result in the exten-
sion of the mortgage.   The plaintiff points out that the pro-
vision in the rent agreement referred only to the mortgage
and not to the note.   But the note and mortgage must be

construed together, *Strong* v. *Jackson,* 123 Mass. 60; *Geffen* v. *Paletz,* 312 Mass. 48, and it is difficult to perceive how there could be a valid extension of the maturity of the note without its resulting in an extension of the mortgage. The defendant reserved the power to foreclose the mortgage in accordance with its terms and unaffected by either rent agreement. The plaintiff had possession of the premises under the terms of the mortgage and so was entitled to the rents and profits. G. L. (Ter. Ed.) c. 183, § 26. *Montuori* v. *Bailen,* 290 Mass. 72. The defendant, as shown by the vote of its investment board fixing the terms of the conveyance to the plaintiff, considered it necessary for the plaintiff to make monthly payments from the rent; and the rent agreements were executed for this purpose and were to continue as long as they were observed by the plaintiff and also as long as the defendant was willing to allow the note to remain outstanding. It was undisputed that the principal of the note was unpaid. There was no breach of the second rent agreement in foreclosing the mortgage, and there was no evidence to show that the foreclosure was in violation of any contract between the parties. The same is true of the action of tort in so far as it purported to rest upon a breach of contract. And apart from any contract, the evidence does not show the violation of a duty that the defendant owed the plaintiff. The defendant conformed in all respects to the provisions of the mortgage in foreclosing the mortgage. The defendant was not required to give any notice to the plaintiff. The price at which the property was bid in was not so inadequate as to indicate want of good faith. The sale was not invalid on the ground that the defendant's investment board voted to foreclose because the rents had been trusteed. The affidavit attached to the foreclosure deed set forth that the principal was due and unpaid, and that this was one of the breaches of the conditions of the mortgage. Without pursuing the subject further, it is sufficient to say that there was no want of good faith or lack of reasonable diligence upon the part of the defendant in foreclosing the mortgage. *Silva* v. *Turner,* 166 Mass. 407. *Cambridge Savings Bank* v. *Cronin,* 289 Mass. 379. *Char-*

*trand* v. *Newton Trust Co.* 296 Mass. 317. *Ross* v. *Vadeboncoeur,* 298 Mass. 523. *DesLauries* v. *Shea,* 300 Mass. 30. *Fleming* v. *Dane,* 304 Mass. 46. *Davis* v. *Newburyport Five Cents Savings Bank,* 311 Mass. 377.

It follows that the motion for a directed verdict in each case should have been granted; the defendant's exceptions are sustained and judgment in each case must be entered for the defendant.

*So ordered.*